Dunlap v. Gregory et al.

## J. J. DUNLAP
### v.
### ALLAN GREGORY ET AL.

1. SETTING ASIDE JUDGMENT BY DEFAULT.—When a judgment which is plainly unjust has been rendered against a party by default, if a reasonable excuse is shown for not having made a defense, and the party against whom the judgment is rendered exercises reasonable and ordinary diligence in moving to set it aside, it is the duty of the court to exercise its discretion by granting the motion, especially if it be made at the same term at which the judgment is rendered.

2. DISCRETION OF COURT.—The discretion vested in the courts to grant or deny motions of this character, is not an absolute, but a legal discretion which is subject to be reviewed.   Under the showing as made by plaintiff in error in this case, the court is of opinion that there was not any such lack of diligence on his part as to debar him from an opportunity to present his defense upon its merits.

ERROR to the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.   Opinion filed April 15, 1884.

This was an action of assumpsit brought by the defendants in error, in the Superior Court of Cook county, against the plaintiff in error, Dunlap, and his partners, Beale Brothers & Fish. Summons was issued November 3, 1883, against the defendants

Beale and Fish, which was returned not found.  On the same day a *capias ad res.* was issued against Dunlap, upon which he was arrested.  November 14, 1883, the capias, on motion of his attorney, was quashed, and the capias was ordered to stand as a summons.  Declaration containing the common counts, filed November 16, 1883; December 6, 1883, judgment against plaintiff in error by default for want of appearance, for $6,153.41.

·Defendant Dunlap moved the court to set aside the judgment and default upon his own affidavit, which was as follows:

J. J. Dunlap, being duly sworn, says that he is one of the defendants in the above entitled cause; that said action was commenced on the 3d day of November, A. D. 1883, by the issuance of a *capias ad respondendum*, against the affiant, under which this affiant was arrested and confined in the county jail for ten days; that thereupon this affiant employed one Albion Cate, a regular attorney of this court, to act as his attorney in said cause, and paid to said Cate his retainer of one hundred dollars ($100); that said Cate appeared before this court as the attorney of said affiant, and made a motion to quash said capias, on the fourteenth (14th) day of November, 1883, which said motion was granted and this affiant was discharged from arrest; that thereupon this affiant immediately left for his home at Perry, in the State of Iowa, supposing that said Cate would continue to act for him and protect his interests in said cause, and supposing from the information derived from said Cate, that the quashing of said capias put an end to said litigation; that after he reached home he received a letter, a copy of which this affiant is unable to produce, from said Cate, saying that said cause required further attention, and asking this affiant to remit to him one hundred dollars ($100) more for his additional services therein; that immediately upon receipt of said letter from said Cate, this affiant wrote to said Cate, stating that his understanding was, as in fact it was, that said Cate should act for him in the entire litigation for the one hundred dollars ($100) already paid, but if said Cate insisted, he would send him twenty-five dollars ($25) to pay

Dunlap v. Gregory et al.

said Cate for securing a continuance and protecting his, this affiant's, interests, until he could come to Chicago and arrange for the defense of said suit; and this affiant supposed that arrangement was then made for his protection in said action, and that said Cate would continue to act for him therein; and this affiant continued in that belief, and supposed that said Cate would act as his attorney therein and make a proper defense therein, until about the 6th day of December, A. D. 1883, when he received another letter from said Cate, refusing to act further in said cause unless he received one hundred dollars ($100); and this affiant further says that upon the receipt of the said first letter from said Cate, this affiant, to arrange beyond peradventure for the making of his said defense in said suit, wrote also to one J. M. Longeneker, another attorney of this court, asking him to see said Cate, and if he, said Cate, did not intend to act for this affiant, to obtain the papers from said Cate, and himself act as his, this affiant's, attorney therein; that this affiant supposed that he had thus made complete arrangements for the defense of said suit, and did not know such was not the case until he received a letter from said Longeneker, on or about the eighth (8th) day of December last; and in the same or next mail this affiant received a copy of the Drover's Journal, a newspaper issued at the Stock Yards, in the city of Chicago, stating that judgment in said cause had been rendered against this affiant for the sum of six thousand one hundred and fifty-three dollars and forty-one cents ($6,153.41), by default; that this affiant had also been informed by C. E. Cox, Esq., his attorney at Perry, Iowa, that the capias did not operate as a summons.

And this affiant further says that he intended in good faith to contest the claim made in said cause, and did not intend to allow judgment to go against him by default; that he has a good defense thereto upon the merits, as to the whole of said claim; that said action is brought against this affiant and the other defendants as partners, under the firm name of Beale Bros., Dunlap & Fish, for moneys claimed to have been advanced by said plaintiffs to said parties; that the amount of said advances was originally about nine thousand dollars

($9,000), and this affiant understood and claims the fact to be that said advances were made to the defendant, Dennis Beale, and not to said partnership; that the agreement between said partners was that said Dennis Beale was to furnish the capital for said business, and this affiant, so understanding the matter, paid to said Beale his share of the amount of said advances, the same being the amount of his share of the losses of said business; that this affiant is informed by this payment to said Beale and the transfer by him to plaintiffs of said amount, he was enabled to and did reduce the amount of said advances to the amount now claimed by said plaintiffs.

And this affiant further says, that prior to the commencement of said suit, to wit, on the twenty-fifth (25th) day of October, 1883, the defendants, L. J. Beale, Dennis Beale and Peter Fish, partly out of the funds of said partnership, paid to the said plaintiffs, in settlement and discharge of the plaintiffs' said claims, the sum of fifty-one hundred dollars ($5,100), and in consideration thereof the plaintiffs on the same day executed and delivered to said Beale and Fish a full discharge and release from all indebtedness due to said plaintiffs from said firm of Beale Bros., Dunlap & Fish, which said release was signed by said plaintiffs and is now in the possession of said defendants; by reason of the premises, this affiant says that he has a good defense to said claims, upon the merits at least, to the extent of said fifty-one hundred dollars ($5,100) so paid thereon by his said partners, and as he is advised by counsel, to the full extent of said claim; and this affiant says that this application is made in good faith, with the intention of vigorously making his defense to said action, and not for the mere purpose of delay, and further this affiant says not.

(Signed)                    J. J. DUNLAP.

Sworn to.

The court refused to vacate the judgment and defendants appealed to this court.

HENRY S. ROBBINS, for plaintiff in error.

Messrs. McCoy, Pope & McCoy, for defendants in error.

Wilson, J.   It is the settled rule in this State that motions to set aside defaults are addressed to the sound legal discretion of the court, and unless there has been such an abuse of that discretion as works palpable injustice, appellate tribunals will not review such decisions.   The Supreme Court has expressed the rule by varied language in different cases.   In some of the earlier cases stronger qualifying terms were used than in more recent cases.   In Greenleaf v. Roe, 17 Ill. 474, the language is " very gross and flagrant abuse "; in Rich v. Hatheway, 18 Ill. 549, " gross and flagrant abuse "; in Union Hide and Leather Co. v. Woodley, 75 Ill. 436, " gross abuse"; Hitchcock v. Hersen, 90 Ill. 543, " palpable abuse "; Andrews v. Campbell, 94 Ill. 579, " unless it appear that the discretion has been abused and injustice done."

In Mason v. McNamara, 57 Ill. 274, the Supreme Court said:   " As we understand the long and well-settled practice in this State it has always been liberal in setting aside defaults at the term at which they were entered, where it appears by affidavit that the party has a defense to the merits, either as to the whole or a material part of the cause of action; it has been usual to set aside the default if a reasonable excuse is shown for not having made the defense.   In such cases the object is that justice be done between the parties, and not to permit one party to obtain and retain an unjust advantage."

In Allen v. Hoffman, 12 Bradwell, 576, the court said: " But he was not bound to show the highest degree of diligence, his motion to set aside the default having been made at the same term at which the default was entered.   All he was bound to show was a good and meritorious defense, and the exercise on his part of reasonable and ordinary care and diligence."

In Waugh v. Suter, 3 Bradwell, 274, it is said:   " In applications to set aside default, we regard the point of a meritorious defense as altogether the more important of the two required, and where the judgment is evidently unjust, a certain degree of neglect may, especially as terms can be imposed, be held to be excusable."

In the light of these cases the rule may be properly stated thus: When a judgment which is plainly unjust has been rendered against a party by default, if a reasonable excuse is shown for not having made a defense, and the party against whom the judgment is rendered exercises reasonable and ordinary diligence in moving to set it aside, it is the duty of the court to exercise its discretion by granting the motion, especially if it be made at the same term at which the judgment is rendered. The discretion vested in the courts to grant or deny motions of this character is not an absolute but a legal discretion, which is subject to be reviewed. Were it otherwise the gravest consequences to the rights of persons and property might result through the mistakes or errors in judgment of inferior tribunals.

According to the showing of the affidavit of Dunlap, which, for the purposes of the motion to vacate, must be taken as true, the plaintiffs' demand at the time of the trial had been reduced to $1,033.41, if it had not been wholly extinguished, and yet they obtained and are seeking to retain a judgment for six thousand dollars and upward. To permit such a judgment to stand would be a reproach to a court of justice, unless, indeed, the plaintiff in error is chargeable with such a degree of negligence as to leave him no standing in court. This, we think, is not shown. His residence was in Iowa, but being found here he was arrested on the capias issued in the cause and thrown into prison. He employed Albion Cate, Esq., a practicing attorney of Chicago, to assist him in his defense, paying him $100. A motion to quash the capias was made by Cate, which prevailed, and Dunlap was discharged from arrest. Supposing from information derived from Cate, as he swears, that the quashing of the capias put an end to the suit, he returned to his home in Iowa. He subsequently received a letter from Cate, saying the case was not ended, but needed further attention, and demanding an additional $100. He immediately replied by mail, saying he understood the $100 already paid was to secure Cate's services in the entire litigation, but that if Cate required it he would send him $25 to pay him for procuring a continuance and pro-

tecting his interests until he could reach Chicago and arrange, for his defense. In order to guard against the chances of miscarriage, he also wrote to another Chicago attorney, one Longeneker, asking him to see Cate, and if the latter did not intend to act for him, requesting Longeneker to obtain the papers and act as his attorney in the case. He thus supposed, as he says, that he had made complete arrangements for defending the action, and did not learn the contrary until informed by Longeneker in a letter dated December 8, 1883, two days after the judgment had been rendered against him by default for want of appearance, Cate's previous appearance having been special and confined to the motion to quash the capias. January 5, 1884, and during the same term, plaintiff in error entered his motion to vacate the judgment and set aside the default.

Under the showing as thus made we can not say that there was any such lack of diligence on the part of plaintiff in error as to debar him from an opportunity to present his defense upon its merits. Perhaps in the exercise of the very highest degree of diligence, his motion to vacate should have been made more promptly, but it is to be borne in mind that he lived in another State, at a distance from Chicago, where the defendants in error had seen fit to arrest him; moreover, so far as appears, they had suffered no loss by the delay.

The judgment is reversed and the cause remanded with directions to the court below to vacate the judgment, set aside the default and allow the defendant to plead to the merits.

Reversed and remanded.